IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marlon Thomas,  Petitioner, vs. Conrad M. Graber, Warden,  Respondent. | No. 10-602-TUC-CKJ (HCE)  **REPORT & RECOMMENDATION** |

Pending before the Court is Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. §2241 (Doc. 1). Respondent has filed a Return and Answer. (Doc. 9). Pursuant to the Rules of Practice of this Court, this matter was referred to the undersigned Magistrate Judge for a Report and Recommendation. For the following reasons, the Magistrate Judge recommends that the District Court dismiss and deny the Petition.

**I.   PROCEDURAL BACKGROUND**

At the time Petitioner filed his Petition, he was an inmate at the Federal Correctional Institute in Safford, Arizona (hereinafter "FCI Safford"). Petitioner is currently serving a 97-month sentence of incarceration, to be followed by 3 years of supervised release, for conviction of Possession of With Intent to Distribute a Controlled Substance, and Aiding and Abetting, in violation of 21 U.S.C. §841(a) and 18 U.S.C. §2. (Answer, p. 2). Petitioner is projected to complete his sentence on August 15, 2014, via good conduct time, and his full-term release date is July 26, 2015. (*Id.*).

In his Petition, Petitioner alleges that he was deprived of his constitutional right to due process with regard to a March 2009 disciplinary hearing which resulted in Petitioner's loss

1  of 40 days of good time credit, a 30-day imposition of disciplinary segregation, and
2  classification of Petitioner "as a dangerous and violent prisoner" rending him ineligible for
3  transfer to a minimum security prison. (Petition, pp. 1-2). Petitioner requests, *inter alia,* that
4  the Court void the incident report, restore the lost good time credit and "purge" the
5  disciplinary hearing report from institutional records which would, in turn, allow for his
6  transfer to a minimum security prison. (*Id.* at p. 5).

## II.     SUMMARY OF THE CASE

On February 5, 2009, Officer Watson, while conducting a "random shakedown" of Petitioner's cell, discovered a "prison made weapon (shank)."[1] (Answer, Exh. 6; *see also* Answer, Exh. 5, ¶V.). The weapon was found in a box of laundry soap located in a wall locker that also contained personal property items belonging to Petitioner. (*Id.*).

Petitioner was given a copy of the incident report by Lt. M. Morris-Silveira. (Answer, p. 4, (*citing* Exh. 5, ¶1.A.)). Thereafter, Petitioner appeared before the Unit Disciplinary Committee (hereinafter "UDC"). (Answer, Exh. 6). Petitioner stated that the locker was "the 3rd locker" in the cell, both he and his cell mate used the locker, and he denied that the box of soap containing the shank was his. (*Id.*). The UDC referred the matter to the Discipline Hearing Officer (hereinafter "DHO"). (*Id.*).

Petitioner was initially appointed a staff representative after the UDC hearing. (Answer, p. 4 (*citing* Exh. 5, ¶II.A.,B.,C.)). However, on the day of the DHO hearing, Petitioner waived staff representation. (*Id.*).

At the DHO hearing, Petitioner testified on his own behalf[2] as follows:

> I have no reason to have that. I have been here for six months. I have 14 points. I have been focused so much on getting out to the camp. There is no reason for me to have that. It was not mine. That was not my box of soap. My locker was locked. We were sharing the 3rd locker and I did have property

---

[1] When the incident occurred, Petitioner was housed at the Federal Correctional Institute in Sheridan, Oregon. (*See* Answer, Exh. 6; Petition, Exh. A).

[2] Petitioner did not request any witnesses at the DHO hearing. (Answer, p. 5 (*citing* Exh. 5, ¶III.C.1-4.)).

1     in that locker.

2 (Answer, Exh. 5, ¶V). On March 7, 2009, DHO Cortez found that Petitioner committed the prohibited act of possession of a weapon. (Answer, Exh. 5, ¶V.). In reaching his decision, the DHO considered: (1) Petitioner's testimony at the DHO hearing; (2) the eyewitness account of Officer Watson who discovered the shank; (3) a photograph of the shank found; (4) Petitioner's statement to Lt. Morris-Silveira during the investigation that:

> You have got to be kidding me. The only sharp thing I had in my locker was a guitar string I was going to use to get a tattoo. That is not mine. I would have [sic] never have that. I have been asking Case Manager Perona bout my points because I am trying to get to the Camp. I would never do anything to mess that up[;]

and (5) Petitioner's statements to the UDC committee denying ownership of the box of soap and stating that he and his cell mate both used the third locker where the shank was discovered. (*Id.*). The DHO pointed out that despite Petitioner's denial, Petitioner did not present any evidence or witnesses to dispute the charge. (Answer, Exh. 5, ¶5). The DHO found that "the greater weight of the evidence (Reporting officer's statement [that] he found the weapon in a box of soap in a locker which contained other property of inmate Thomas, the photo of the weapon and inmate Thomas' admission during the DHO hearing that he did maintain the locker in question in order to store property) indicates inmate Thomas did [sic] committed the prohibited act of Possession of a Weapon." (*Id.*). The DHO sanctioned Petitioner with a loss of 40 days good conduct time and a 30-day disciplinary segregation. (*Id.* at ¶VI.). On March 10, 2009, Petitioner was provided with a copy of the DHO's report. (*Id.* at ¶IX.).

## III. DISCUSSION

### A. Jurisdiction

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,'...and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir.2000) *(quoting FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990), *overruled in part on other grounds by City of Littleton, Colo. v. Z.J. Gifts D-4, L.L.C.,* 541 U.S. 774 (2004)). With regard to habeas

- 3 -

1 petitions, federal jurisdiction is dependent upon a proper characterization of the petition.
2 *Gay v. Winn,* 2009 WL 275324, *2 (D.Ariz. Feb. 5, 2009).

3       Generally, an action to contest the legality of a sentence must be filed pursuant to 28
4 U.S.C. §2255, whereas an action to challenge the execution of a sentence must be filed
5 pursuant to 28 U.S.C. § 2241. *Hernandez,* 204 F.3d at 864. Petitioner does not claim that
6 the sentencing court imposed an illegal sentence. Instead, he seeks relief with respect to
7 disciplinary proceedings that, in part, resulted in the loss of good time credit while
8 incarcerated at a federal correctional facility. Petitioner, therefore, is challenging the manner,
9 location, or condition of the execution of his sentence, and his claim is properly before the
10 Court under 28 U.S.C. §2241. *See e.g. Tucker v. Carlson,* 925 F.2d 330, 332 (9th Cir. 1991)
11 (a prisoner's challenge to the "manner in which his sentence was executed...[is] maintainable
12 only in a petition for habeas corpus filed pursuant to 28 U.S.C. §2241."); Gay, 2009 WL
13 275324 at * 2 (*citing Rogers v. United States,* 180 F.3d 349 (1st Cir. 1999)). Further, because
14 Petitioner is incarcerated at the Federal Correctional Institution in Safford, Arizona, this Court
15 has jurisdiction over Petitioner's matter. *Francis v. Rison,* 894 F.2d 353 (9th Cir. 1990); *Gay*,
16 2009 WL 275324 at * 2.

17       B.    Exhaustion

18       Federal prisoners are generally required to exhaust available administrative remedies
19 before filing a habeas corpus petition pursuant to 28 U.S.C. §2241. *See Tucker,* 925 F.2d at
20 332; *Martinez v. Roberts,* 804 F.2d 570, 571 (9th Cir. 1986). The failure to satisfy the
21 exhaustion requirement applicable to section 2241 proceedings is not jurisdictional. *Brown
22 v. Rison,* 895 F.2d 533, 535 (9th Cir. 1990) *overruled on other grounds by Reno v. Koray,* 515
23 U.S. 50, 54-55 (1995). Thus, where a federal prisoner fails to exhaust administrative
24 remedies prior to filing a section 2241 petition, "the district court must determine whether
25 to excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his
26 administrative remedies before proceeding in court." *Id.* The district court may exercise its
27 discretion to excuse the exhaustion requirement if the administrative remedy is inadequate,
28 ineffective, or if attempting to exhaust would be futile or cause irreparable injury. *Fraley v.*

- 4 -

*United States Bureau of Prisons,* 1 F.3d 924, 925 (9th Cir. 1993); *United Farm Workers of America v. Arizona Agr. Emp't. Relations Bd.,* 669 F.2d 1249, 1253 (9th Cir. 1983). Factors weighing in favor of requiring exhaustion include whether (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct is own mistakes and to preclude the need for judicial review. *Noreiga-Lopez v. Ashcroft,* 335 F.3d 874, 880-81 (9th Cir. 2003) (*citing Montes v. Thornburgh,* 919 F.2d 531, 537 (9th Cir. 1990)). *See also Ruviwat v. Smith,* 701 F.2d 844, 845 (9th Cir. 1983) (recognizing that requiring exhaustion of administrative remedies "will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.").

Respondent concedes that "Petitioner has exhausted his administrative remedies in this matter." (Answer, p. 3). However, elsewhere in his Answer, Respondent states that to the extent that Petitioner challenges his custody classification, he did not exhaust such claim. (Answer, p. 7). The record reflects that Petitioner sought administrative remedy only with regard to the DHO report. (*See* Answer, Exh. 4). Petitioner does not address Respondent's argument and the record does not support waiving the exhaustion requirement in this case with regard to the reclassification claim. Petitioner's unexhausted request for reclassification is not ripe for review. Moreover, to any extent that Petitioner's request for reclassification rises and falls with his due process challenge regarding the disciplinary proceeding, the Court's conclusion, *infra*, that Petitioner's claim regarding the disciplinary proceeding lacks merit necessarily renders his request for reclassification moot.

C.      Merits of Petitioner's Due Process Claim

Federal prisoners have a statutory right to good time credits. *See* 18 U.S.C. § 3624. Accordingly, they have a due process interest in the disciplinary proceedings that may take

- 5 -

1 away those credits. *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). "Due process in a
2 prison disciplinary hearing is satisfied if the inmate receives written notice of the charges,
3 and a statement of the evidence relied on by the prison officials and the reasons for
4 disciplinary action." *Zimmerlee v. Keeney*, 831 F.2d 183, 186 (9th Cir. 1987), *cert. denied*,
5 487 U.S. 1207 (1988). "The inmate has a limited right to call witnesses and to present
6 documentary evidence when permitting him to do so would not unduly threaten institutional
7 safety and goals." *Id.*

8 The final decision to revoke good time credits must be based on "some evidence."
9 *Superintendent v. Hill*, 472 U.S. 445, 455 (1985). Thus, once the *Wolff* protections have
10 been met, the only function of the federal court is to review the statement of evidence
11 supporting the findings against Petitioner to determine whether the decision is supported by
12 "some evidence." *Id.* ("[T]he requirements of due process are satisfied if some evidence
13 supports the decision by the prison disciplinary board to revoke good time credits."). "[T]he
14 relevant question is whether there is any evidence in the record that could support the
15 conclusion reached by the disciplinary board." *Id.* at 455-56. If so, then due process is
16 satisfied. *Id.* *Hill*'s "some evidence" standard is "minimally stringent" and, in making a
17 determination, the court need not examine the entire record, independently assess the
18 credibility of the witnesses, or weigh the evidence. *Cato v. Rushen,* 824 F.2d 703, 705
19 (*citing Hill,* 472 at 455).

20 Respondent correctly points out that Petitioner was afforded all procedural safeguards
21 required by *Wolff*. (Answer, p. 4). Petitioner received a copy of the incident report from Lt.
22 Morris-Silveira.[3] He was afforded staff representation, which he later waived. He makes no
23 assertion that DHO Cortez, who neither investigated nor witnessed the incident, was partial.
24 He received a statement of the evidence relied upon by the DHO in support of the

---

[3] Petitioner claims that he was not told why he, instead of his cell mate, was written up. (Petition, p.2). Due process requires that Petitioner be advised of the charges, the evidence relied on by the prison officials and the reasons for disciplinary action. Petitioner received such notice.

- 6 -

1 disciplinary action.

2 Petitioner asserts that his request for a "fingerprint test..." was denied and "said
3 requests were kept out of the records and reports[.]" (Petition, p. 2). The record reflects that
4 Petitioner never mentioned a request for fingerprints in his administrative appeals. Petitioner
5 has a due process right to "present documentary evidence in his defense when permitting him
6 to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*,
7 418 U.S. at 566. A request for fingerprint evidence, however, goes beyond the bounds of a
8 request to compile and present documentary evidence, rather, such request is tantamount to
9 a request that the petitioner be allowed to conduct his own investigations into the offense.
10 *See Flanagan v. Warden,* 784 F.Supp. 178, 180 (M.D.Pa. 1992), *aff'd,* 6 F.3d 779 (3d Cir.
11 1993), ("Petitioner is not constitutionally entitled to such tests [*i.e.*, a fingerprint analysis or
12 polygraph examination] to prove his innocence."); *Ibarra v. Ochoa,* 2011 WL 2985156, at
13 *6 (C.D.Cal. June 15, 2011), *report and recommendation adopted by* 2011 WL 2981433
14 (C.D.Cal. July 20, 2011), ("courts 'confronting due process claims based on prison officials'
15 denial of requests for fingerprinting and other scientific analyses have concluded that the
16 minimal procedural guarantees prescribed by *Wolff* do not encompass a right to have
17 evidence tested for fingerprints or subjected to similar analyses.'" (*quoting Barboza v.
18 Kelsey,* 2008 WL 2512785, at *11 (C.D.Cal. June 23, 2008) and (collecting citations)).
19 Furthermore, Petitioner did not dispute the shank was found in a locker in his cell, thus, even
20 if he had established that his fingerprints were not on the box of soap and/or the shank
21 contained therein, such evidence would not negate the possession charge.

22 Petitioner asserts that he strongly believed that staff searched "his locker based on a
23 note from an informant, who was the individual responsible for planting the shank in his
24 room, yet this fact was never disclosed." (Petition, p.2). There is no factual support
25 whatsoever for Petitioner's assertion that an informant was used in this case and/or the theory
26 that said informant planted the shank.

27 Petitioner asserts that the locker: was "not my assigned locker and was easily
28 accessible by all the inmates in the unit"; contained property belonging to another inmate;

- 7 -

1 and the "DHO Report was written, by design, to insinuate and make it appear is if only some
2 of my property was stored in this locker[.]" (*Id.*). Petitioner also submits the June 23, 2009
3 "Declaration of Facts" (hereinafter "Declaration") signed under penalty of perjury by Frankie
4 Butler, who states he was Petitioner's cell mate at the time of the incident. (Petition, Exh.
5 A). Mr. Butler stated in his Declaration that the locker where the shank was found was
6 located in the cell he shared with Petitioner, he shared the locker with Petitioner, he kept
7 various items in the locker as did Petitioner, there was no lock on the locker "and anyone and
8 everyone in the unit could have easily accessed and planted that weapon in the laundry soap
9 box while we were out of the cell." (*Id.*). Mr. Butler further denied that the weapon was his.
10 (*Id.*). He opined that Petitioner "is a victim regarding this matter...." (*Id.*). Petitioner argues
11 that Mr. Butler's Declaration "exculpated and/or provided persuasive evidence that petitioner
12 was not guilty of the charge." (Petition, p. 3). According to Petitioner, if a proper
13 investigation had been conducted, there would be corroboration for his statements that Mr.
14 Butler also used the locker and that others had access to the locker. (*Id.*). Petitioner does
15 not state why he did not present Mr. Butler's testimony at the DHO hearing. The
16 Administrator of National Inmate Appeals considered Mr. Butler's Declaration upon
17 Petitioner's Central Office Administrative Remedy Appeal and stated that:

> Ultimately the decision rested on the greater weight of the evidence presented, as detailed in Section V of the DHO report. While you dispute having responsibility for the weapon, there is no verifiable evidence supporting your claim. The greater weight of the evidence places the weapon amongst your property, and given the general opinion on the matter, you are responsible for all contraband found in your permitted belongings short of incontrovertible evidence supporting a different conclusion. We find the determination based on this evidence, reasonable.

(Answer, Exh. 4).

Mr. Butler's Declaration does little, if anything, to aid Petitioner. Mr. Butler confirms that Petitioner had access to the locker where the shank was found, that Petitioner kept personal items in that locker, and that the shank did not belong to Mr. Butler. True, Mr. Butler also confirms that he also used the locker and the locker could have been accessed by others in the unit. In the absence of direct evidence pointing to a defendant's guilt, the "some

- 8 -

1  evidence" standard of *Hill* may be satisfied by application of the constructive possession
2  doctrine. *See, e.g., Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001) (Where "the only
3  evidence linking [petitioner] to the bolt cutters is that they were found in an area in which
4  he worked, but to which approximately one hundred inmates had access," the "some
5  evidence" standard was not met.); *but see Hamilton v. O'Leary*, 976 F.2d 341, 346 (7th Cir.
6  1992) (Where weapons were found in a cell that housed the plaintiff and three other inmates,
7  the "some evidence"standard was met.). Petitioner argues the DHO's decision violated due
8  process because the locker where he admittedly stored some of his possessions was
9  accessible by his cell mate and other inmates. (Petition, p. 2). The Court does not agree.

10  The DHO did not rely on a constructive possession theory to support his findings.
11 This case is different from constructive possession cases where inmates have equal access
12 to the common area, shared with other inmates.  Here, the locker was located in a cell shared
13 by Petitioner and Mr. Butler.  Petitioner was clear that *he* "and his cellie used that locker."
14 (Answer, Exh. 5, ¶V).  While other inmates may have some access to Petitioner's cell, there
15 is no showing that they had the same degree of access and control that Petitioner exercised
16 over his living area and the locker in which he admittedly stored his own possessions.  The
17 DHO found that Petitioner possessed the shank not because he lived in the unit in which the
18 shank was found, but because the shank was discovered in Petitioner's cell, in a box of soap
19 located in a locker which Petitioner admitted he used to store his personal property.  These
20 facts directly connected Petitioner to the shank and, thus, the DHO did not rely on a theory
21 of constructive possession.  Moreover, that some other inmate could have placed the shank
22 in the locker without Petitioner's knowledge is irrelevant.  "The Federal Constitution does
23 not require evidence that logically precludes any conclusion but the one reached by the
24 disciplinary board." *Hill,* 472 U.S. at 457.  Instead, "due process in this context requires only
25 that there be some evidence to support the findings made in the disciplinary hearing", it does
26 not require that the supporting evidence outweigh the evidence to the contrary.  *Id.*  The
27 DHO in this case relied on sufficient evidence to satisfy the "some evidence" test.

28

### IV.    CONCLUSION

Petitioner failed to exhaust his claim for reclassification.  Moreover, to the extent that Petitioner's reclassification claim rises and falls with his due process challenge to the disciplinary proceedings, such claim is moot given that Petitioner received all due process safeguards required in prison disciplinary proceedings.  Petitioner is not entitled to habeas corpus relief under 28 U.S.C. § 2241.

### V.    RECOMMENDATION

For the foregoing reasons the Magistrate Judge recommends that the District Court: (1) dismiss Petitioner's request for reclassification for failure to exhaust, or in the alternative, deny the request as moot; and (2) deny Petitioner's due process challenge regarding the disciplinary decision with prejudice.

Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil Procedure and LRCiv 7.2(e), Rules of Practice of the U.S. District Court for the District of Arizona, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed.R.Civ.P. 72(b)(2). Failure to file timely objections to any factual or legal determination of the Magistrate Judge may be deemed a waiver of the party's right to *de novo* review of the issues. If objections are filed, the parties should use the following case number: **CV 10-602-TUC-CKJ.**

The Clerk is directed to send a copy of this Report and Recommendation to the Petitioner and the Respondent.

DATED this 5th day of April, 2012.

_____
Héctor C. Estrada
United States Magistrate Judge